Filed 1/30/15  P. v. Jones CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E060211 |
| v. | (Super.Ct.No. RIF1308036) |
| ISHMAEL GABRIEL JONES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Charles J. Koosed, Judge.  Affirmed.

Paul S. Berger, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Kristine A. Gutierrez and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant and appellant Ishmael Gabriel Jones guilty of making criminal threats.  (Pen. Code, § 422.)  The trial court granted defendant 36 months

1

formal probation with the condition defendant serve 245 days in county jail, which equated with the 245 days credit defendant had already accrued. Defendant contends the trial court erred by denying his *Batson/Wheeler*[1] motion. We affirm the judgment.

## FACTUAL AND PROCEDURAL HISTORY

A.    OFFENSE

On August 6, 2013, the victim was working by herself at a bakery as a cashier. At approximately 9:00 a.m., defendant entered the bakery wearing a backpack. The victim recognized defendant because he had been in the bakery on prior occasions asking for food and trying to sell items such as purses, condoms, and headphones.

On August 6th, defendant told the victim he was going to charge his cellular phone using one of the bakery's electrical outlets. The victim told defendant he could not charge his phone at the bakery. Defendant became upset. Defendant moved back and forth and yelled. Defendant said "he [(defendant)] used to be a terrorist. He used to terrorize people and that he was going to come back and blow up the place with [the victim] inside of it." Defendant called the victim "a bitch." Defendant said a customer, who was also in the bakery, was "lucky" because the customer "was going to live," while the victim was not. The victim felt threatened because she "didn't know what [defendant] was capable of doing." Defendant left the bakery, but stood "nearby" outside. The customer eventually left. The victim locked the bakery's door and called the police.

---

[1] *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*); *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*).

B.     JURY SELECTION

The trial court began asking questions of 24 prospective jurors.  The trial court gave the prospective jurors a printed list of questions.  The list of questions does not appear in the record; however, the prospective jurors' answers to the questions are in the record.  Two of the prospective jurors were M.N. and D.J.  In response to the questions, D.J. said she was unmarried, unemployed but had previously worked in retail, was a part-time college student, and did not have children.

In response to the printed questions, M.N. said she was a widow, retired from a job in retail sales, and had five children.  M.N. disclosed that one of her children was mentally ill, and another of her children had been tried for threatening a woman.  M.N. said that, at one point, M.N.'s home was "broken into"; she did not believe police located a suspect.

The trial court asked the attorneys for their peremptory challenges.  The prosecutor requested to excuse D.J. and M.N.  Defense counsel made a *Batson/Wheeler* motion.  Defense counsel explained that defendant, D.J. and M.N. were African-American.  Defense counsel asserted their shared race was sufficient to establish a prima facie case.

The prosecutor explained, "[D.J.], she showed up ten minutes late after we joined the Court at 1:30.  She's also unemployed and young and I don't find her to be a suitable juror for this case."  In regard to M.N., the prosecutor explained that M.N. had a mentally ill child, which would be "somewhat of an issue," because the defense had

3

implied that mental illness may be an issue in the case. The prosecutor also noted that M.N.'s son had been accused of a threat-related offense.

The trial court found a prima facie was established, but the prosecutor "adequately rebutted any inappropriate use of their preemptory [*sic*] challenges." The court found the prosecutor's reasons were neutral and appropriate. The court noted there were other African-American people on the panel and in the jury box, so defense counsel could bring the motion again if needed. The trial court explained that it did not necessarily agree with the prosecutor's choice to excuse a potential juror due to tardiness and unemployment, but that it believed the prosecutor was sincere in her race-neutral reasons for excusing D.J.

After testimony began in the case, defense counsel made a further record regarding her *Batson/Wheeler* motion from the day prior. Defense counsel could not recall the names of the two prospective jurors the prosecutor had challenged. The trial court explained, "[D.J.] was the younger of the two. I think she was the single mom that was—came late to court."[2] Defense counsel asserted Juror No. 8 had arrived to court approximately 30 minutes late and was young as well. Defense counsel noted that Juror No. 8 appeared to be White, and the prosecutor allowed Juror No. 8 to remain on the panel. The trial court remarked that Juror No. 8 was not African-American.

The prosecutor responded that D.J. was unemployed, which the prosecutor felt "was significant in whether or not they're motivated to sit in something like this. And

---

[2] D.J. had said during voir dire that she did not have children.

she was late at the lunch break, you know, so being a single mom had nothing to do with whether or not she was late.  And to me from my past experience, that is an indication of how serious they approach this task."  The trial court said, "All right.  Recess."  After the recess, testimony resumed.

During voir dire, when Juror No. 8 answered the printed questions, he said he was single, did not have children, worked in retail management for CVS, had been at his job for three years, had a high school diploma, and was a student pursuing his college degree.

## DISCUSSION

### A.    CONTENTION

Defendant contends the trial court erred by denying his *Batson/Wheeler* motion because (1) the prosecutor did not have a sufficient racially neutral reason for challenging D.J.; and (2) the trial court did not properly evaluate the prosecutor's claimed justifications.

### B.    LAW

"The three-stage procedure of a *Batson*/*Wheeler* motion is now familiar.  'First, the defendant must make out a prima facie case "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose."  [Citations.] Second, once the defendant has made out a prima facie case, the "burden shifts to the State to explain adequately the racial exclusion" by offering permissible race-neutral justifications for the strikes.  [Citations.]  Third, "[i]f a race-neutral explanation is tendered, the trial court must then decide . . . whether the opponent of the strike has

5

proved purposeful racial discrimination."' [Citation.]" (*People v. Williams* (2013) 56 Cal.4th 630, 649.)

C.    STANDARD OF REVIEW

"'Review of a trial court's denial of a *Wheeler/Batson* motion is deferential, examining only whether substantial evidence supports its conclusions.' [Citation.] 'We presume that a prosecutor uses peremptory challenges in a constitutional manner and give great deference to the trial court's ability to distinguish bona fide reasons from sham excuses.' [Citation.] As long as the court 'makes a sincere and reasoned effort to evaluate the nondiscriminatory justifications offered, its conclusions are entitled to deference on appeal.' [Citation.]" (*People v. Williams*, *supra*, 56 Cal.4th at p. 650.)

D.    RACE-NEUTRAL JUSTIFICATION

The prosecutor challenged D.J. because she believed D.J. might not approach jury duty with a sufficiently serious attitude. We now examine whether the evidence supports this race-neutral reasoning. The record reflects D.J. was young, unemployed, had no children, was attending school part time, and arrived late to court following the lunch recess. It is reasonable, from this information in the record, for the prosecutor to be concerned about D.J.'s attitude toward jury service. D.J. appeared to have few obligations or responsibilities, which could cause one to infer she is irresponsible or immature. This inference is then supported by D.J. returning to court 10 minutes late following the lunch recess—reflecting a lack of responsibility or lack of maturity concerning jury duty. Accordingly, given this information, we conclude there is

6

substantial evidence supporting the prosecutor's race-neutral justification. (See *People v. Sims* (1993) 5 Cal.4th 405, 429-430 [juror challenged due to perceived immaturity].)

Defendant contends that since Juror No. 8 was also young and late to court, the prosecutor's only reason for challenging D.J. was that D.J. was unemployed. Defendant asserts that D.J. was attending college part time, had previously worked in retail, and may have had a good reason for being unemployed. Defendant asserts that being unemployed is not sufficient to prove D.J. was immature or irresponsible. As explained *ante*, "[w]e presume that a prosecutor uses peremptory challenges in a constitutional manner."'" (*People v. Jones* (2011) 51 Cal.4th 346, 361.) Defendant's argument looks at the information in the record in a light favorable to the defense, i.e., there may have been a good reason for D.J.'s unemployment. Defendant is disregarding the presumption in favor of the prosecutor. Since D.J. was unemployed, appeared to have few responsibilities, and was late to court, we conclude there was adequate support for the prosecutor challenging D.J. for a race-neutral reason.

E.     TRIAL COURT'S EVALUATION

Defendant contends the trial court did not make a sincere and reasoned attempt to evaluate the prosecutor's proffered race-neutral justification.

In the third step of analyzing a *Batson/Wheeler* motion, the trial court must determine if the defendant has proven purposeful racial discrimination. (*People v. Stanley* (2006) 39 Cal.4th 913, 936.) "'In determining whether the defendant ultimately has carried his burden of proving purposeful racial discrimination, "the trial court 'must make "a sincere and reasoned attempt to evaluate the prosecutor's explanation in light

7

of the circumstances of the case as then known, his knowledge of trial techniques, and his observations of the manner in which the prosecutor has examined members of the venire and has exercised challenges for cause or peremptorily . . . .'"'" [Citation.] "[T]he trial court is not required to make specific or detailed comments for the record to justify every instance in which a prosecutor's race-neutral reason for exercising a peremptory challenge is being accepted by the court as genuine." [Citation.] Inquiry by the trial court is not even required. [Citation.] "All that matters is that the prosecutor's reason for exercising the peremptory challenge is sincere and legitimate, legitimate in the sense of being nondiscriminatory." [Citation.] A reason that makes no sense is nonetheless "sincere and legitimate" as long as it does not deny equal protection. [Citation.]' [Citation.]" (*Ibid.*)

After defense counsel made the *Batson/Wheeler* motion, presented a prima facie case, and the prosecutor presented race-neutral justifications, the trial court said, "I think the People have adequately rebutted any inappropriate use of their preemptory [*sic*] challenges. I do find their reasons to be neutrally given and appropriate, and those are the ones [the prosecutor] indicated just now in response to the prima facie case . . . ." The trial court explained that there were other African-American people on the panel or in the jury box, so defendant could bring another *Batson/Wheeler* motion if needed. Further, the trial court said it did not necessarily agree with the prosecutor's choice to challenge D.J. due to D.J. being late and unemployed, but that it believed the prosecutor's justifications were legitimate and sincere.

8

The trial court's comments reflect it listened to both the prosecutor and defense counsel, and evaluated both arguments. On the prosecutor's side, the trial court explained that it did not agree with the prosecutor's reasoning, but that it nonetheless believed the prosecutor was sincere in her belief that D.J. should be disqualified due to being tardy, young, and unemployed. On defendant's side, the trial court invited defendant to make another *Batson/Wheeler* motion if there were further peremptory challenges to prospective African-American jurors, implying such challenges may create a stronger case of purposeful discrimination. The trial court's remarks reflect that it found defendant had not yet met his burden of proving purposeful racial discrimination, and that the prosecutor's justifications were sincere and legitimate. Accordingly, the record reflects the trial court made a sincere and reasoned attempt to evaluate the prosecutor's explanation.

Defendant contends the trial court did not make a sincere and reasoned attempt to evaluate the prosecutor's stated justifications because the trial court was not sufficiently critical of the prosecutor's "implausible" reasoning. Defendant asserts the trial court's failure to critically explore the prosecutor's justifications reflects the court did not make a sincere and reasoned attempt to evaluate the issue.

Our Supreme Court explained, in response to a similar argument, "the 'court denied the motions only after observing the relevant voir dire and listening to the prosecutor's reasons supporting each [challenge] and to any defense argument supporting the motions. Nothing in the record suggests that the trial court either was

9

unaware of its duty to evaluate the credibility of the prosecutor's reasons or that it failed to fulfill that duty.'" (*People v. Jones*, *supra*, 51 Cal.4th at p. 361.)

As explained *ante*, there is sufficient information in the record to support the prosecutor's reasoning. The record reflects the trial court listened to defense counsel's argument and the prosecutor's reasoning prior to evaluating the prosecutor's stated justifications. As a result, we are not persuaded by defendant's argument because there is nothing indicating that the trial court needed to probe further in order to rule on the motion.

Defendant also raises the issue of comparative analysis.[3] "[C]omparative juror analysis is but one form of circumstantial evidence that is relevant, but not necessarily dispositive, on the issue of intentional discrimination." (*People v. Lenix* (2008) 44 Cal.4th 602, 622.) Defendant compares D.J. to Juror No. 8. Juror No. 8 was employed as a manager at CVS, and had been at the job for three years. In terms of information available on the record, the primary differences between D.J. and Juror No. 8 were employment status and race. Juror No. 8's employment as a manager supports a finding that he possessed some maturity and responsibility. As a result, this difference in employment status is a critical one, because it provides a race-neutral justification for the prosecutor challenging D.J., while not challenging Juror No. 8. Namely, it explains why the prosecutor could have found Juror No. 8 acceptable for a race-neutral reason—

_____

[3] The People contend defendant forfeited this issue for review by failing to raise the comparative analysis in the trial court prior to the jury being empanelled. We choose to address the merits of the issue because it is easily resolved.

Juror No. 8 had demonstrated some maturity and responsibility by having a management level job. As a result, we are not persuaded that the only difference between D.J. and Juror No. 8 was race.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
J.

We concur:

RAMIREZ _____
P. J.

McKINSTER _____
J.

11